CHARLES A. TAYLOR, executor of JAMES N. TAYLOR, plaintiff in error, *vs.* MARTIN L. HARP and WILLIAM B. JONES, sheriff, defendants in error.

It seems that injunction should not be granted upon allegations resting on information, hearsay and belief of an executor unsupported by any personal knowledge; certainly not unless some person makes affidavit as to the facts, from his knowledge.

The discretion of the Judge below in dissolving this injunction having been cautiously and properly exercised, the judgment is affirmed.

Equity. Motion to dissolve injunction. Decided by Judge VASON. Sumter Superior Court. October Term, 1867.

James N. Taylor sold to James E. Tooke and William J. Tooke certain lands, and took from them their note for $7,445.42, as part of the purchase money. About the same time he bought from Harp several tracts of land, and gave Harp in payment some cash and his note for $5,780.30.

When Taylor's note was due and Harp demanded its payment, Taylor said he could not pay till the Tookes paid him. Harp sued Taylor on said note, and to be prepared to meet it, Taylor sued .the Tookes on their note. Harp got his judgment in the Spring of 1863, and Taylor got his in the fall of that year. The stay-law prevented the collection of these judgments.

But Harp wishing his money (and there being no currency then except Confederate currency) told Taylor that if he would take Confederate money in payment from said Tookes, he, Harp, would take it in payment of his judgment. Implicitly relying upon this statement and promise of Harp, Taylor immediately went to the Tookes and took currency from them in full discharge of their debt, and took it to Harp to pay him, but Harp would not take it. The judgment against the Tookes was perfectly good, and was collected only because of said promise by Harp, and by his refusal to take it, was wholly lost to Taylor.

Taylor died in 1866, and Harp afterwards procured the said sheriff to levy his *fi. fa.* founded on said judgment on Taylor's property, and was about to sell the same.

Upon this state of facts, averred by the executor of Taylor, upon information, the chancellor was asked to enjoin Harp and said sheriff from proceeding with the *fi. fa.* The injunction was granted by Judge Cole. Subsequently Harp filed his answer and moved to dissolve the injunction.

In the answer, Harp absolutely denied having ever made any promise to Taylor, deceased, to take currency in payment of said judgment, said he never had an idea of doing so, and gave no intimation to deceased in any way, or at any time, that he would.

At the hearing, complainant read an affidavit of Mrs. Taylor, stating that during the war Harp came to see her husband to get his money, and her husband, after a long talk with Harp, told her that Harp had agreed to take Confederate money, and after that, during the war, Harp's son came after his father's money; her husband went and collected the Tooke *fi. fa.*, went to see Harp and came back exasperated because Harp would not take the currency. He also read an affidavit of E. S. Baldwin, stating that some time during the war, and after said judgments were obtained, Harp went to deceased's house and asked for money, deceased told him he could not pay unless he would take Confederate money, and could get that only on his Tooke judgment. Harp said he would take said currency, deceased at once col-

lected his Tooke judgment and went to pay Harp, and came back mad because Harp would not take the currency. He was not certain whether the person who made the promise was Harp or his son, but he was confident it was the father.

To support the answer, Harp produced the affidavit of John W. Wiseman, stating that he was present in 1864 at Harp's house when deceased offered to pay Harp's judgment in currency, and heard the whole conversation; that deceased said he would pay Harp if he would take currency, and Harp refused, saying he had plenty of such money; that nothing was said by deceased about any contract or promise by Harp to take currency, nor did he, in conversing with deponent before and after he had conversed with Harp, say one word about such agreement or promise, though he was displeased because Harp would not take the currency.

The motion was argued before Judge Vason by consent, and he dissolved the injunction. This is assigned as error.

C. T. GOODE, ROBINSON & ROBINSON, for plaintiff in error.

W. A. HAWKINS, S. HALL, for defendant in error.

HARRIS, J.

The plaintiff in error, as executor, filed his bill against defendant, alleging that defendant in 1866 had agreed with his testator to receive in payment of an execution held by defendant previous to the war, Confederate treasury notes at par; that in pursuance of such agreement, his testator had made a tender of Confederate notes, which defendant refused to receive as payment; and upon a bill thus framed, prayed an injunction to restrain the collection of the *fi. fa.* in other currency, etc. The injunction was granted. The allegations in complainant's bill were not founded on his own knowledge, but on information and hearsay.

The defendant answered the bill and denied the agreement set forth, or anything that could give color to the idea, for a moment, that he had ever made such an one, or agreed to

receive Confederate treasury notes in payment, upon any terms whatever, and thereupon moved the Court to dissolve the injunction.

On the hearing of this motion, the Court received and acted upon affidavits of other persons than the parties to the suit, and upon looking into them, as well as the bill and answer, sustained the motion. It appears to us that the injunction should not have been granted upon allegations resting on information, hearsay and belief of an executor, unsupported by any personal knowledge; certainly not unless the bill was accompanied by the affidavit of some other person, stating clearly his knowledge. But putting aside the opinion that the injunction was improvidently granted, we are entirely satisfied with the course afterwards pursued by the presiding Judge, and the discretion vested in him in retaining or dismissing an injunction, seems to have been cautiously exercised. There is nothing in complainant's case, as shewn by his record, which demands our interference.

Judgment affirmed.